**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case: 1:26-mj-00032 |
| | Assigned To: Judge Harvey, G. Michael |
| **v.** | Assign. Date: 2/12/2026 |
| | Description: COMPLAINT W/ARREST WARRANT |
| | |
| **MELITON CORDERO,** | **UNDER SEAL** |
| | |
| **Defendant.** | |

**AFFIDAVIT IN SUPPORT OF**
**CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Robert Tansey, being first duly sworn, hereby depose and state as follows:

## I.    IDENTITY OF THE AFFIANT

1.    I am a Special Agent with Homeland Security Investigations ("HSI"). I have been a Special Agent with HSI since November 2022. Before joining HSI, I was a Deportation Officer with United States Immigration and Customs Enforcement for approximately six years, which included two years as a detailee to the HSI Opioid Task Force. During my law enforcement career, I have participated in investigations that have included physical and electronic surveillance, controlled narcotics purchases, debriefings of confidential sources, reviews of taped conversations, and the execution of search and arrest warrants. I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a).

2.    I am assigned to this investigation and base the facts set forth in this affidavit upon my personal knowledge, information obtained during my participation in this investigation, review of documents, knowledge obtained from other individuals including law enforcement personnel, and communications with others who have personal knowledge of the events and circumstances described herein.

3. This affidavit is not intended to include every fact and matter observed by me or known to the government relating to the subject matter of this investigation. Instead, this affidavit contains only those facts which are necessary to establish that probable cause exists.

## II. REASON FOR THE AFFIDAVIT

4. This affidavit is made in support of a criminal complaint charging MELITON CORDERO with Conspiracy to Commit Bribery and Visa Fraud, in violation of 18 U.S.C. § 371, Bribery, in violation of 18 U.S.C. § 201(b)(2), and Visa Fraud, in violation of 18 U.S.C. § 1546. This affidavit is also submitted in support of an arrest warrant.

## III. PROBABLE CAUSE

### A. Summary of Investigation

5. In December 2025, HSI Santo Domingo Special Agents (SA) received information from a Source of Information ("SOI-1") that Individual A was participating in a U.S. visa fraud scheme. Individual A, who is a known promoter and talent agent of music in the Dominican Republic, is associated with numerous U.S. nonimmigrant visa applications. The investigation has revealed that Individual A and DEA Supervisory Special Agent MELITON CORDERO have conspired to commit bribery and visa fraud. CORDERO has been assigned to the U.S. Embassy in the Dominican Republic for approximately 5 years. The investigation revealed that in exchange for approximately $10,000—$3,000 of which was transferred to Individual A via a Dominican Republic financial services provider and $7,000 of which was provided in cash to CORDERO during a meeting with a second Source of Information ("SOI-2")—CORDERO helped secure a nonimmigrant visa for SOI-2 based on fraudulent representations.

### B. Background About Nonimmigrant Visas

2

6.      Foreign nationals can request numerous types of nonimmigrant visas. All correspond with a specific purpose and are temporary in nature to include a nonimmigrant visitor visa allowing foreign nationals to visit the United States for a temporary period.

7.      United States direct-hire employees, to include United States law enforcement officials working at the United States Embassy in Santo Domingo, can submit either a Nonimmigrant Visa Priority Appointment Request ("REQUEST") via form DS-5534 or a Nonimmigrant Visa Referral ("REFERRAL") via form DS-5533. These REQUESTS and REFERRALS are governed by the United States Department of State ("DOS") and are documented in chapter 9 of the Foreign Affairs Manual section 601.8. In both instances the referring or requesting official must certify that assisting the contact directly furthers United States national interests or a compelling mission priority and that the contact must be personally and favorably known to the referring or requesting official or for the REQUEST, the requesting official must have reasonable knowledge of the contact's bona fides. To submit either the DS-5534 REQUEST or DS-5533 REFERRAL, the referring requesting official must attend and complete a referral/priority appointment request briefing with a consular manager and submit a signed and dated Nonimmigrant Visa Referral and Priority Appointment Request Program Compliance Agreement. DOS law enforcement indicated that Cordero completed such training and entered into the above-mentioned compliance agreement in 2021 and 2024.

### C.  Investigation

8.      SOI-1 stated that he/she had previously worked at the U.S. Embassy in Santo Domingo in the consular section and currently owned a company that assists individuals in the application process for U.S. immigration documents. SOI-1 stated that he/she had worked

legitimately with Individual A for a couple years assisting Individual A with the visa application process for several of Individual A's clients.

9.      SOI-1 stated in approximately November 2024, he/she was assisting an applicant and was experiencing long waiting periods for nonimmigrant visas. SOI-1 stated that Individual A informed him/her that he had a connection at the U.S. Embassy that could expedite the process to as little as 2 weeks, a process that generally can take up to 18 months. Individual A provided the email address, Meliton.Cordero@dea.gov, and encouraged SOI-1 to reach out via email. That email address is assigned to DEA Supervisory Special Agent MELITON CORDERO.

10.     Individual A informed SOI-1 that the fee for such connection and service would be $10,000 dollars and that approximately $2,000 was paid upfront and an additional $8,000 had to be paid after the consular interview. SOI-1 provided HSI Santo Domingo SAs with a screenshot of a WhatsApp conversation he/she had with Individual A dated November 12, 2024, which contained the above-mentioned DEA email address. SOI-1 stated that he/she declined the offer at the time and continued to work with Individual A professionally. [1]

11.     SOI-1 stated that in November of 2025, Individual A again brought up the scheme to him/her. This time Individual A sent SOI-1 a screenshot of a WhatsApp message between Individual A and a contact listed as "Milito Clara." The contact "Milito Clara" is associated with a phone number ending in 1841, which is known to law enforcement as the Dominican-based DEA work phone utilized by CORDERO. This screenshot showed communication between

---

[1] The investigation has revealed that Individual A and CORDERO have used WhatsApp to communicate, including by sending text messages and voice memos, and by sharing files/photos.

Individual A and "Milito Clara," including Individual A asking if he is still active about visas to which "Milito Clara" replies yes.

12.    It should be noted that the above-mentioned screenshots and all mentioned below screenshots and other communications, such as consensually-monitored calls and voice notes, were in Spanish and have been roughly translated by native Spanish-speaking law enforcement officers for context.

13.    Law enforcement identified a telephone number ending in 9930 as the cell phone utilized by Individual A in connection with WhatsApp messages between him and SOI-1. T-Mobile records indicate that Individual A is the subscriber for the number ending in 9930.

14.    On or about December 19, 2025, under the direction of law enforcement, SOI-2 filed an online non-immigrant visa application, DS-160. On the same date, SOI-1 sent Individual A a picture of SOI-2's passport via WhatsApp.

15.    On or about December 22, 2025, Individual A provided SOI-1 with a screenshot of a WhatsApp message conversation between Individual A and a contact identified as "Milito Clara" showing that Individual A had sent the picture of SOI-2's passport to "Milito Clara." The screenshot also showed Individual A as having sent a 16 second voice message after the picture, to which "Milito Clara" replied he will find out.  The screenshot also showed Individual A as having sent an additional message, which appeared to be an attempt to remind "Milito Clara" about the above-mentioned picture and voice message to which "Milito Clara" responded that the contact is away until January and he will let him know when they return. Law enforcement believes "Milito Clara," i.e., CORDERO, was informing Individual A that he, the contact, would return to the Dominican Republic in January. Flight records show that CORDERO traveled from

the Dominican Republic to the United States on December 16, 2025, and returned to the Dominican Republic on January 5, 2026.

16. On or about January 6, 2026, Individual A contacted SOI-1 via WhatsApp audio messages and informed SOI-1 that SOI-2 needed to make a $3,000 deposit for the visa. Individual A instructed SOI-1 to inform SOI-2 to make the payment via money transfer through Caribe Express, a money transfer and currency exchange company based in the Dominican Republic. Individual A provided SOI-1 with his full name and Dominican Republic Cedula number, which is a Dominican Republic national identification number.

17. On or about January 7, 2026, SOI-1 contacted Individual A for a status check of SOI-2's visa application. Individual A provided SOI-1 with a screenshot of a WhatsApp message conversation between Individual A and the contact identified as "Milito Clara" showing that Individual A had re-sent the picture of SOI-2's passport to "Milito Clara." Individual A then responded to the photo he re-sent asking "Milito Clara" to let him know if we're still active. On the same date, CORDERO, utilizing his DEA assigned government phone with a number ending in 0814 sent DOS law enforcement a picture of SOI-2's passport via WhatsApp and asked DOS law enforcement to "do a quick check." CORDERO also provided a second picture of a passport belonging to a second individual. DOS law enforcement replied "No derog or visas for either of them" to which CORDERO replied "10.4 thank you."

18. On or about January 9, 2026, Individual A provided SOI-1 with his address and all other necessary information to complete the transfer via Caribe Express. On the same date, SOI-2 utilizing currency provided by the United States government and at the direction of law enforcement, sent $3,047.62 dollars to Individual A via Caribe Express.

6

19. On or about January 13, 2026, CORDERO emailed a DS-5533, REFERRAL, to the U.S. Embassy Santo Domingo Consular email inbox. This DS-5533 contained the signature and information of a different DEA Special Agent as the referring official and CORDERO as the approving official. The DS-5533 is dated January 8, 2026, and contains SOI-2's name, phone number, and email address as the contact and principal applicant. Further, under the narrative section articulating how the contact directly furthers U.S. national interest is typed SOI-2's full name and the assertion that SOI-2 "is a valued contact of the DEA, the Sensitive Investigative Unit, and the U.S. Department of Justice, and is employed as a receptionist. We are in bi-weekly contact with the applicant, during the performance of investigative duties and the identification of investigative interest. Such duties are in the furtherance of combating drug trafficking and money laundering directly affecting the U.S. The work is vital to supporting DEA's priorities at Post and in providing security to the U.S." SOI-2 has confirmed that prior to and outside of the operation he/she has never had any contact with CORDERO nor ever provided CORDERO or the DEA with any information nor does he/she have bi-weekly contact with CORDERO or anyone he/she knows to be employed by the DEA with the exception of this operation directed by law enforcement.

20. On or about January 21, 2026, Individual A contacted SOI-1 and asked that SOI-2 contact the telephone number ending in 1841—which as noted above is associated with CORDERO—with the contact shared as "Milito Clara." CORDERO used the number ending in 1841 on several of his prior REQUESTS and REFERRALS. Individual A advised SOI-1 that SOI-2 should text the 1841 number and then he/she would receive a call. On the same date, SOI-

2 received a consensually monitored phone call from CORDERO via the 1841 number.[2] CORDERO asked SOI-2 where he/she worked and informed SOI 2 to tell consulate interviewers that they met each other at the club approximately one year ago where SOI-2 works. Further, CORDERO informed SOI-2 to tell the interviewers that he is DEA and that SOI-2 provides the DEA and CORDERO with information and in return is paid $400 dollars whenever the DEA and CORDERO ask him/her. CORDERO informed SOI-2 that he/she needs to get the form notarized prior to his/her appointment.

21.     On or about January 22, 2026, SOI-2 participated in a consular interview regarding his/her nonimmigrant visa application.

22.     On or about January 27, 2026, CORDERO utilizing the 1841 number contacted SOI-2 and informed him/her that he was in possession of his/her passport containing the visa. CORDERO instructed SOI-2 to meet him in the parking lot of the Supermix Supermarket, located at Av. Republica de Colombia 82, Santo Domingo, Dominican Republic. Law enforcement provided SOI-2 with covert audio recording devices and $7,000 dollars requested by CORDERO in a red shopping bag. Law enforcement conducted physical surveillance of SOI-2 as he/she arrived at the SUPERMARKET. CORDERO contacted SOI-2 utilizing the 1841 number and informed him/her that he was in the parking lot driving a Black Toyota Prado and to enter the vehicle. Surveillance observed a Black Toyota Prado bearing license plate ending in 112. CORDERO never got out of the vehicle, so law enforcement surveilling the scene did not see CORDERO, but merely SOI-2 and the vehicle.  SOI-2 entered the Black Toyota Prado with

---

[2] SOI-2 did not know CORDERO's actual name and CORDERO never told SOI-2 his actual name, but as noted below, SOI-2 identified CORDERO through a photo array.

the red shopping bag. After exiting the Black Toyota Prado, SOI-2 informed law enforcement that he/she provided CORDERO with the $7,000 dollars and that CORDERO provided him/her with the passport containing the visa. A review of the audio recording devices included CORDERO asking SOI-2 when and where he/she intended on traveling to and in the United States. Further, SOI-2 informed CORDERO that he/she was going to leave the bag in the vehicle to which CORDERO stated yes, yes, yes leave it there at the door.

23. As noted above, although the law enforcement surveillance team did not physically see CORDERO during the $7,000 payment, U.S. Embassy security surveillance footage showed that CORDERO, immediately preceding the meeting with SOI-2 at the SUPERMARKET, departed the U.S. Embassy in Santo Domingo via a Black Toyota Prado, a vehicle known as being mainly utilized by CORDERO for work related activities.

24. On or about February 2, 2026, law enforcement created a photo lineup array containing a photograph of CORDERO, obtained from his Florida driver's license, in position "5." Included in the photograph array were 5 other photographs obtained utilizing facial recognition compared to a U.S. government database of photographs from immigrant and nonimmigrant visa applications.

25. On or about February 3, 2026, law enforcement provided instructions to the photograph array. After reading the instructions, law enforcement provided the photograph array to SOI-2. SOI-2 pointed to position "5," a photograph of CORDERO and indicated that this photo appeared to be the person he/she met with at the SUPERMARKET, however, the photograph appeared older and the individual he met with appeared heavier. Furthermore, SOI-2 asked to see additional photographs in order to make a positive identification. On this same date, law enforcement created a new photo lineup array, containing a photograph of CORDERO,

9

obtained from his U.S. Passport, in position "5." This photograph was utilized as it is significantly more recent than the Florida driver's license. Upon providing this photo lineup array, SOI-2 immediately stated that number 5 was the individual who he/she had met at the supermarket and provided the currency to on January 27, 2026. SOI-2 circled number 5 and initialed below.

26.     On February 3, 2026, SOI-2 provided a sworn statement indicating that SOI-2 had never provided information to the DEA, that SOI-2 had never had communications with anyone SOI-2 believed to be a member of the DEA, that SOI-2, prior to the January 27, 2026, date had never met or had communication with the individual SOI-2 obtained SOI-2's passport containing a visa from on January 27, 2026, and that on January 27, 2026, SOI-2 provided the currency given to SOI-2 by law enforcement to the same individual who provided SOI-2 the passport containing a visa.

27.     On February 5, 2026, law enforcement identified that between approximately March 2022 and February 2026, CORDERO has submitted approximately 74 REQUESTs or REFERRALs and has approved (as a supervisor, similar to the facts surrounding SOI-2) approximately 45 REQUESTs or REFERRALs totaling approximately 119 REQUESTs or REFERRALs in a period of less than 4 years. Law enforcement has been informed by consular staff that this volume is extraordinarily high compared to other law enforcement agents and agencies assigned to the U.S. Embassy Santo Domingo.

## CONCLUSION

28.     Based on the facts and circumstances contained in this affidavit, your affiant believes there is probable cause to issue an arrest warrant for Meliton Cordero for violating 18 U.S.C. § 371, 18 U.S.C. § 201(b)(2), and 18 U.S.C. § 1546.

10

Respectfully submitted,

_____
Robert M. Tansey
Special Agent
Homeland Security Investigations


Subscribed and sworn pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on February 12, 2026.


_____
G. MICHAEL HARVEY
UNITED STATES MAGISTRATE JUDGE